UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

UNITED STATES OF AMERICA

    - against -

EDDIE ROBINSON JR.,                                    **AMENDED**
                                                  **MEMORANDUM AND**
                Defendant.                      **O R D E R**

-------------------------------------X        08 Cr. 976 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Presently before the Court is defendant Eddie Robinson, Jr.'s *pro se* motion to dismiss the information and withdraw his guilty plea.  For the reasons stated below, Robinson's motion is denied in its entirety.[1]

<u>BACKGROUND</u>

**I.    The Complaint**

      Robinson was initially charged with one count of bank fraud in violation of 18 U.S.C. § 1344 in a complaint filed May 14, 2008.  Specifically, the Complaint alleged that Robinson provided false

---

[1] Because Robinson has not presented any "significant questions concerning the voluntariness or general validity of [his] plea," his request for a hearing on his motion is denied.  <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1100 (2d Cir. 1992).

1

information to a bank insured by the FDIC in order to open a line of credit for his personal use.

## II.  The Information and Cooperation Agreement

After several proffer sessions with the Government, Robinson pleaded guilty to a seven-count information (the "Information") pursuant to a cooperation agreement (the "Cooperation Agreement") on October 8, 2008.  The Information charged Robinson with one count of conspiracy to commit bank and wire fraud and one count of conspiracy to commit bank fraud, both in violation of 18 U.S.C. § 1349; four counts of bank fraud in violation of 18 U.S.C. § 1344; and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A.

The Cooperation Agreement listed each crime, the maximum penalties applicable to each, and the total maximum term of imprisonment for the crimes charged of 182 years.  It also stated that the aggravated identity theft charge "carries a mandatory minimum of two years' imprisonment, to run consecutive to any other term of imprisonment imposed[.]" (Mem. of Law of the United States of America in Opp. to the Def.'s Mot. to Dismiss (the "Gov't Mem."), Ex. A at 1).  By signing the Cooperation Agreement, Robinson "acknowledge[d] that he ha[d] accepted [the Cooperation Agreement] and decided to plead guilty because he [was] in fact guilty." (Id. at 5).  Robinson agreed to, inter alia,

2

> cooperate fully with [the Office of the United States
> Attorney for the Southern District of New York ("this
> Office")], the Federal Bureau of Investigation, and any
> other law enforcement agency designated by this Office;
> . . . bring to this Office's attention all crimes which
> he has committed, and all administrative, civil, or
> criminal proceedings, investigations, or prosecutions in
> which he has been or is a subject, target, party, or
> witness; and . . . commit no further crimes whatsoever.

(Id. at 2).   The Cooperation Agreement provided that if the Government determined "that Robinson . . . provided substantial assistance in an investigation or prosecution, and if he . . . fully complied" with the Cooperation Agreement, the Government would "file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), requesting the Court to sentence Robinson in light of the factors set forth in Section 5K1.1(a)(1)-(5) [the "5K1.1 Motion]." (Id. at 3).   However, the Cooperation Agreement also stated that if the Government determined that Robinson had not provided "substantial assistance in an investigation or prosecution, or that Robinson . . . violated any provision" of the Cooperation Agreement, the Government would have no obligation to file the 5K1.1 Motion.   (Id. at 4).

## III. The Guilty Plea

Magistrate Judge Maas conducted a plea allocution in accordance with the requirements of Federal Rule of Criminal Procedure 11.   As specifically relevant to this motion, Magistrate Judge Maas asked if Robinson was satisfied with his lawyers and

3

Robinson stated that he was.  Magistrate Judge Maas went on to ask
whether Robinson understood that the aggravated identity theft
charge "carries a mandatory minimum of two years' imprisonment,
and that that sentence must run consecutive to any other term of
imprisonment that may be imposed?"  (Gov't Motion, Ex. B at 8:11-
14).   Robinson replied that he understood.   Further, Robinson
confirmed that he had discussed the Cooperation Agreement with his
lawyer before signing it and that no promises or threats had
induced him to enter into the Cooperation Agreement.   Finally,
Robinson stated that he was pleading guilty because he was in fact
guilty.  Magistrate Judge Maas recommended that this Court accept
Robinson's guilty plea, because Robinson "underst[ood] the nature
of the seven charges against him and the consequences of pleading
guilty to them" and that Robinson "enter[ed] his plea voluntarily
and knowingly and that there is a sufficient factual basis for the
plea." (Id. at 23:4-8).  On October 16, 2008, this Court accepted
Robinson's plea.

IV.  **Robinson's State Court Indictment**

In August 2014, Robinson was indicted in New York County on
one count of grand larceny in the second degree (the "State Court
Indictment").  Specifically, the State Court Indictment alleged
that Robinson stole property with a value of more than $50,000

from an individual.   A warrant was subsequently issued for Robinson's arrest.

**V.    The Present Motion**

On December 18, 2014, Robinson filed a *pro se* motion to dismiss, which the Court interprets as a motion to dismiss the Information and withdraw his guilty plea.   Robinson argues in support of his motion to dismiss the Information that the Government violated his Fourth Amendment rights through its actions in taking him into custody in 2008 and extensive post-plea surveillance.   In further support of this motion, Robinson alleges that an AUSA lied to him regarding the New York County District Attorney's investigation that led to the State Court Indictment. Finally, Robinson argues that this Court is without jurisdiction to adjudicate his case.   With respect to his motion to withdraw his guilty plea, Robinson argues that the Government misled him into entering into the Cooperation Agreement and unilaterally added terms to the Cooperation Agreement after execution, and that he received ineffective assistance of counsel both before and after his plea.

**VI.   Robinson's Decision to Proceed *Pro Se***

In his motion, Robinson fired his retained attorneys.   At a conference held on January 6, 2015 to initially address Robinson's motion, the Court relieved his attorneys and appointed Criminal

5

Justice Act panel attorney Sean Hecker as counsel.  Robinson stated
that he did not want counsel and insisted on representing himself.
As the New York County District Attorney had not been able to
execute its arrest warrant, and Robinson presented a danger to the
community and a risk of flight, the Court also revoked Robinson's
bail and remanded him to the custody of the U.S. Marshals.

By letter of February 2, 2015, the Government requested an
examination to ensure that any "waiver of his Sixth Amendment right
to counsel is made competently, knowingly, intelligently, and
voluntarily."  (Stansbury Ltr. of Feb. 2, 2015 at 2).
Specifically, the Government sought a colloquy with Robinson
"during which he is made aware of the dangers and disadvantages of
proceeding *pro se*." (Id. at 3).  The Government on March 10, 2015
subsequently proposed a list of questions by letter that the Court
might ask Robinson in such a colloquy.  The Government sent a copy
of both letters to Robinson.

The Court also sent a letter to Robinson on March 24, 2015.
That letter highlighted several of the dangers of proceeding *pro
se*, such as the inability of the Court to assist him in his defense
and the risks of continuing without the advice of an experienced
lawyer, especially with respect to the effect his motion would
have on his ability to receive the benefits of his Cooperation
Agreement.

6

On April 27, 2015, this Court held a conference in order "to make the appropriate inquiry to be sure that [Robinson] wish[ed] to waive [his] right to counsel[.]" (Apr. 27, 2015 Tr. at 2:22-23).  The Court confirmed that Robinson had received and reviewed the March 10, 2015 letter from AUSA Shane Stansbury as well as the March 24, 2015 letter from the Court.  It was explained to Robinson that both letters sought to "let [him] know the types of benefits that any defendant gets from having experienced counsel, and we just need to know that [he had] given this . . . the appropriate amount of thought." (Id. at 7:16-19).  As part of his allocution, Robinson stated that he had not sought or received significant medical treatment, not seen a mental health professional, and did not seek to waive his right to counsel in response to any threats or promises.  The Court found Robinson "competent to waive his counsel[.]" (Id. at 14:23-24).  The Court further asked Robinson if he understood that, "as is set forth in . . . the [G]overnment's letter and [the Court's] letter . . . , that if [the motion to withdraw the guilty plea and dismiss the Information] is denied, that the [G]overnment is going to argue at sentencing . . . that [Robinson had] violated the terms of [his] cooperation agreement?" (Id. at 15:19-25).  After asking several clarifying questions, Robinson asked if he correctly understood that making the motion would expose him to a significantly longer sentence, which the

Court confirmed.  Robinson was advised that the Court could not provide him with legal advice if he decided to represent himself and that Robinson could utilize the services of a lawyer in order to determine whether he wanted to use counsel.  Robinson agreed to talk to counsel regarding whether or not to pursue the motion and to proceed *pro se*.

By letter of July 15, 2015, the Court informed Robinson that, given that he had spoken to Mr. Hecker, he should inform the Court whether he wished to proceed without counsel and whether he wished withdraw any part of his motion.  Robinson replied, in a letter of August 12, 2015, that he intended to proceed without counsel and that he would provide a submission regarding his motion within a week.  The Court has not received any such communication from Robinson.[2]

## VII. The Government's Position Regarding the Cooperation Agreement

On October 22, 2015, the Government informed the Court and Robinson that the Government takes the position that Robinson has breached the Cooperation Agreement, and as a result, the Government will not file a 5K1.1 Motion on his behalf at sentencing.  The Government maintains that by committing grand larceny in the second

---

[2] In a letter of November 13, 2015, Robinson asserts that he has not received sufficient resources to conduct his defense.  However, more than three months passed between Robinson's letter of August 12, 2015 and his letter of November 13, 2015.  Robinson has had ample time to prepare any reply that he wished to file with this Court.

degree, as alleged in the State Court Indictment, and concealing this crime from the Government, Robinson "failed to abide by his obligations to 'commit no further crimes whatsoever' and to 'bring to this Office's attention all crimes which he has committed.'" (Stansbury Ltr. of Oct. 22, 2015 at 4 (quoting Ex. A at 2)).  The Government also states that Robinson, by failing to fully disclose information regarding the conduct underlying the State Court Indictment and seeking to withdraw his guilty plea, has not fully cooperated with the Government.  Finally, according to the Government, Robinson has "plainly indicated [in the instant motion] that he has no intention of abiding by, or even recognizing, the Cooperation Agreement." (Id.).

## DISCUSSION

### I.   Motion to Dismiss the Information

Robinson argues that the Information should be dismissed for two reasons.  First, he alleges that the Government engaged in misconduct that deprived him of the benefits of the Cooperation Agreement.  Second, he contends that this Court lacks jurisdiction to adjudicate this case.

#### A. Legal Standard

"A defendant who 'pleads guilty unconditionally while represented by counsel may not assert independent claims relating to [the deprivation of constitutional rights that occurred] prior

to the entry of the guilty plea.'" United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (alterations in original) (quoting United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996)).  Such a defendant is limited to challenging the validity of his guilty plea.  Torres, 129 F.3d at 715-16.

In order to obtain dismissal of a charging instrument, a defendant must show demonstrable prejudice.  See United States v. Morrison, 449 U.S. 361, 365 (1981) ("[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of [an] indictment is plainly inappropriate, even though the [government misconduct] may have been deliberate." (footnote omitted)).  "Because of this exacting standard, courts rarely dismiss indictments based on governmental misconduct." United States v. Turner, 23 F. Supp. 3d 290, 319 (S.D.N.Y. 2014) (citations omitted).  Suppression of the evidence obtained through governmental misconduct, and not dismissal of the charging instrument, is generally the proper remedy for constitutional violations in a criminal case.  See, e.g., Morrison, 449 U.S. at 366 ("The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression.").

Federal district courts have original jurisdiction to hear cases regarding "offenses against the laws of the United States," 18 U.S.C. § 3231, unless the charging instrument does not "allege

that a defendant committed a federal criminal offense at a stated time and place in terms plainly tracking the language of the relevant statute." <u>United States v. Rubin</u>, 743 F.3d 31, 38 (2d Cir. 2014) (citation omitted).

### B. Application

Robinson argues that, <u>prior</u> to his guilty plea, the Federal Bureau of Investigations and Department of Justice violated his Fourth Amendment rights by arresting him pursuant to an invalid search warrant, taking him into custody from his home in handcuffs, photographing him, and obtaining his fingerprints.  He further alleges that the Government engaged in extensive surveillance of him in violation of his Fourth Amendment rights <u>after</u> he pleaded guilty.  In addition, Robinson contends that an AUSA 1) falsely stated that he did not know about Robinson's business dealings that gave rise the State Court Indictment when he did in fact know about them as a result of the surveillance of Robinson; 2) said Robinson would not receive the benefit of the Cooperation Agreement and would be remanded to the custody of the U.S. Marshals if he did not confess to the commission of the crime underlying the State Court Indictment; 3) did not believe the evidence proffered by Robinson allegedly proving that such conduct by Robinson was lawful; and 4) lied to Robinson and his lawyer or refused to answer his questions regarding the subject of the New York County District

11

Attorney's investigation into Robinson.   Construing Robinson's arguments liberally, the alleged prejudice to him flows from his inability to realize the benefits of the Cooperation Agreement.

Robinson's arguments regarding the prosecutorial and law-enforcement misconduct do not entitle him to dismissal of the Information.   With respect to the alleged Fourth Amendment violations, he waived any such arguments regarding pre-plea conduct when he pleaded guilty to the Information and the proper forum for raising arguments regarding post-plea violations leading to the State Court Indictment is the New York State Supreme Court via a motion to suppress.   With respect to the alleged prosecutorial violations leading to the Government's decision not to file the 5K1.1 Motion, the Government may rely on the State Court Indictment to determine that Robinson committed a further crime and breached the Cooperation Agreement by doing so.   See United States v. Willis, 118 F. App'x 570, 572 (2d Cir. 2004) ("In the absence of any showing that the Government was acting in bad faith, the fact that [defendant] was arrested on charges of murder, abusing corpses, and credit card fraud provided sufficient justification for the Government to determine that [defendant] violated the terms of the agreement and, hence, for the Government's decision to withhold its § 5K1.1 motion.") (citing United States v. Gregory, 245 F.3d 160, 164 (2d Cir. 2001)).   At

best, Robinson arguably contends that he lost the benefit of the Cooperation Agreement due to the Government's involvement in the State Court Indictment.   However, aside from his surveillance argument, which he supports with no facts, the conduct he describes is consistent with the Cooperation Agreement, which provides that failure to disclose the commission of further crimes and to fully cooperate with the Government amounts to a breach, and that the Government may move for revocation of bail if it determines that Robinson breached the Cooperation Agreement.   Further, the Government is not obligated to believe allegedly exculpatory evidence provided by Robinson.  To the extent Robinson argues that an AUSA lied to him regarding the nature of the investigation, he supports his argument with only conclusory assertions and fails to identify any prejudice to him as a result of these alleged misrepresentations.

Robinson also makes a host of frivolous jurisdictional arguments.  He contends that 1) Magistrate Judge Katz improperly accepted a title of nobility from the "British Accredited Registry or so named the BAR Association," rendering the warrant authorizing his arrest invalid; 2) 18 U.S.C. § 3231 "is in fact not positive law and was not properly ratified by Congress," (Robinson Ltr. of

Apr. 27, 2015 at 2)[3]; 3) a gold-fringed flag flew in the courtroom during his arraignment; and 4) the charges contained in the warrant do not apply to him as a "sovereign flesh and blood American human being."[4]  (Def. Mot. at 6).  Taking each argument in turn: 1) membership in a bar association does not qualify as a title of nobility; 2) Congress properly enacted and the President properly signed into law 18 U.S.C. § 3231, which provides this Court with jurisdiction over the crimes charged in the Information, see United States v. Risquet, 426 F. Supp. 2d 310, 311 (E.D. Pa. 2006); 3) "[t]he yellow fringe trim on the American flag has no effect on a court's jurisdiction or a defendant's constitutional or statutory rights," Joyner v. Borough of Brooklyn, No. 98 Civ. 2579 (RJD), 1999 WL 294780, at *2, 1999 U.S. Dist. LEXIS 5721, at *4 (E.D.N.Y. Mar. 18, 1999) (collecting cases); and 4) the use of capital letters in a warrant or charging instrument does not deprive this Court of jurisdiction. See United States v. Mitchell, 405 F. Supp. 2d 602, 604 (D. Md. 2005).

---

[3] Robinson stated at the April 27, 2015 conference that he had submitted to the Court a reply to the Government's opposition, though the Court had not received such a filing, nor did Robinson subsequently file this document. However, Robinson did provide the Court with a letter, which he described as a "summary" of the arguments outlined in his reply.  (Apr. 27, 2015 Tr. at 20:6-8).

[4] The Court understands Robinson to argue that the Court does not have jurisdiction over Robinson because the use of capital letters in court documents refers not to Robinson himself, but to a "commercial entity."  (See Robinson Ltr. of Nov. 13, 2015 at 1 (referring to "the commercial entity EDDIE DAVID ROBINSON JR ('DEFENDANT') and the private flesh and blood man Eddie David Robinson")).

## II.  Motion to Withdraw the Guilty Plea

Robinson contends that he is entitled to withdraw his guilty plea for two reasons.  First, he alleges that the Government induced him to enter into the Cooperation Agreement under false pretenses and subsequently added terms to the Cooperation Agreement without his knowledge or consent.  Second, he argues that he received ineffective assistance of counsel.

### A. Legal Standard

A defendant may withdraw a guilty plea after a court accepts the plea but before the imposition of the sentence if he "can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The burden of showing that a fair and just reason exists lies with the defendant.  United States v. Doe, 537 F.3d 204, 210 (2d Cir. 2008).  The relevant factors in determining whether the defendant has met this stringent standard include "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; . . . (3) whether the government would be prejudiced by a withdrawal of the plea," id. (citation omitted); and (4) whether the plea was voluntary.  United States v. Schmidt, 373 F.3d 100, 103 (2d Cir. 2004).  When a defendant seeks to challenge the voluntariness of his plea, he may not rely on "bald statements

that simply contradict what he said at his plea allocution[.]" Torres, 129 F.3d at 715 (citation omitted).

A showing of ineffective assistance of counsel may "undermine[] the voluntary and intelligent nature of [a] defendant's decision to plead guilty," thereby entitling the defendant to withdraw his guilty plea. United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (citations omitted). "A claim of ineffective assistance entails a showing that: 1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense." Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (citations omitted). In order to show prejudice sufficient to allow a defendant to withdraw his plea, "the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." Arteca, 411 F.3d at 320 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Where defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, [the Second Circuit has] stated that the issue is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." Ventura v. Meachum, 957 F.2d

16

1048, 1058 (2d Cir. 1992) (internal quotation marks and citations omitted).

**B. Application**

1. Timeliness, Innocence, and Voluntariness

Robinson has not demonstrated a fair or just reason for withdrawing his plea. First, Robinson sought to withdraw his plea on December 18, 2014, more than six years after he pleaded guilty on October 8, 2008. This factor weighs heavily against Robinson, as courts regularly find a delay of a few months militates against allowing a defendant to withdraw a guilty plea. See United States v. Grimes, 225 F.3d 254, 259 (2d Cir. 2000) (district court "well within its discretion in deciding to reject . . . motion" to withdraw guilty plea where nearly five months elapsed between guilty plea and "first indication that [defendant] wished to withdraw it"). Second, Robinson never alleges his innocence, and any such allegation would simply contradict his statements under oath during his plea allocution that he was pleading guilty because he was in fact guilty. Third, allowing withdrawal at this late stage would clearly prejudice the Government, as it "surely would . . . encounter[] difficulties were it required to re-assemble its evidence" more than six years after Robinson pleaded guilty. United States v. Carreto, 583 F.3d 152, 157 (2d Cir. 2009) (finding that "more than a year's delay" would prejudice the Government).

17

Liberally construed, Robinson contends that prosecutorial misconduct rendered his guilty plea involuntary.  According to Robinson, the Government misleadingly induced him to enter into the Cooperation Agreement by falsely claiming that doing so would be in Robinson's best interest even though it exposed him to a longer term of confinement, and that the Government added terms to the agreement after execution.

Neither of these proffered reasons entitles Robinson to withdraw his guilty plea.  Notably, Robinson does not suggest that the Government provided an incorrect assessment of the maximum statutory penalty.  Rather, he argues that an AUSA knew that entering into the Cooperation Agreement would prove contrary to Robinson's interests because the Government would seek to induce Robinson to breach the Cooperation Agreement, thus leaving Robinson exposed to a much greater potential sentence.  However, as noted supra at 12-13, Robinson does not sufficiently allege any facts suggesting that the Government improperly denied Robinson the benefit of the Cooperation Agreement, or even offer a plausible reason that the Government would offer a cooperation agreement to Robinson with the formed intent to induce him to breach it at a later date.  Robinson's claims with respect to the post-execution addition to the Cooperation Agreement of conditions related to the buying and selling of real estate and the purchase of motor

18

vehicles fail because no such conditions exist, (see Gov't Mem.,
Ex. A, at 6 (providing that any additional conditions must be in
a signed writing)), and his allegation that the Government and
Court added travel restrictions to the Cooperation Agreement fails
because those restrictions were conditions of his pre-trial
release. (See Petition for Action on Conditions of Pretrial
Release ("Travel restricted to the Southern/Eastern Districts of
New York (allowed to travel throughout the continental United
States with 48 hours['] notice to the U.S. Attorney['s] Office and
Pretrial Services)[.])")).

    2. Ineffective Assistance of Counsel

Robinson contends that he should be entitled to withdraw his
guilty plea because he received ineffective assistance of counsel.
His retained lawyers, he argues, 1) "had extensive contact with .
. . an informant and cooperator of the [FBI] who had provided
testimony to the [FBI] against [him]," (Def. Mot. at 1-2); 2) hid
from him terms of the plea agreement, specifically the two-year
mandatory minimum sentence associated with the aggravated identity
theft charge; 3) did not provide him with documents that he
requested and refused to transmit documents to this Court on his
behalf; and 4) did not challenge the Court's jurisdiction.

Robinson has not shown that his attorneys provided
ineffective assistance of counsel that undermined the

19

voluntariness of his guilty plea.  First, Robinson does not even allege any prejudice resulting from a meeting that allegedly took place between one of his attorneys and a FBI informant.  Second, his claim that he did not understand that the aggravated identity theft charge carried a two-year mandatory minimum is clearly belied by the record.  At Robinson's plea hearing, Magistrate Judge Maas specifically asked Robinson if he understood that he faced a two-year mandatory minimum on that count, and Robinson said that he did.  Robinson points to no other terms in his Cooperation Agreement that his attorneys allegedly failed to disclose to him before he signed it.  Third, his allegations regarding his attorneys' handling of various documents do not "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial," Arteca, 411 F.3d at 320 (citing Lockhart, 474 U.S. at 59), as the relevant events occurred years after he entered into the Cooperation Agreement.  Fourth, Robinson's challenges to this Court's jurisdiction are frivolous and he therefore suffered no prejudice by any decision by counsel not to argue them to this Court or the Government.

## **CONCLUSION**

For the reasons stated above, Robinson's motion to dismiss the Information and withdraw his guilty plea is denied.  His sentencing is scheduled for March 28, 2016.  The defendant's submission is due on March 14, 2016, and the Government's submission is due on March 21, 2016.

DATED:    New York, New York
          December 3, 2015


          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE

21

Copies of the foregoing Memorandum and Order have been mailed to
the following:

Shane T. Stansbury, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007

Eddie Robinson, Reg. No. 61014-054
MDC Brooklyn - Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232